### D. V. TATE v. THE STATE.

*No. 526.   Decided November 27th, 1895.*

**1.   Continuance—Diligence.**

Where the indictment was presented on the 13th day of November, 1893, and no process for the absent witness was sued out until the 14th day of March, 1894, at which time an attachment was issued, but never returned as to the witness, and thereafter on the 16th day of May, another attachment issued, but was not returned as to the witness. Held: The diligence was insufficient on an application for continuance for the witness at the trial, which was on the 28th day of May.

**2.   Same—Materiality and Probable Truth of the Testimony.**

On a trial for murder, where the application for continuance was for a witness by whom it was expected to prove: (1) That deceased struck defendant the first blow. (2) That the blow was struck without provocation on the part of defendant. Held: That as to the first proposition, the issue being one which was not controverted, but testified to by the State's witnesses, the evidence sought was immaterial. And as to the second, the statement was that of a conclusion or opinion, without any statement of the facts, within the knowledge of the witness, upon which it was based; and moreover, the circumstances going to establish such facts were not testified to by other witnesses, who were shown to have had better opportunities than the absent witness

to know the facts attendant upon the difficulty. And where the evidence adduced shows, that the proposed absent testimony is not probably true, it will be held, that the continuance was properly refused.

### 3. Murder—Evidence—Identification of Defendant.

On a trial for murder, where a State's witness testified, that, in his judgment and belief, he recognized the defendant as one of a party that came to his house on the night before the homicide to borrow a pistol. Held: Admissible; and the fact that the witness was not certain in his identification of defendant, only went to the weight, and not to the admissibility of such testimony.

### 4. Same.

On a trial for murder, where a witness has stated his own position with relation to the parties, and the surrounding circumstances, and all he had seen and heard transpire between them at the time of the difficulty, it is competent for him to state, that if deceased had any weapon in his hands, he did not see it. And, under similar conditions, it is also competent for a witness to state, that if any weapons were lying upon the ground, where the difficulty occurred, he would have seen them.

### 5. Same—Proof as to Absence of a Witness.

On a trial for murder, evidence as to the cause of the absence of a witness for defendant is inadmissible, where the fact of such witness's nonattendance has not been referred to by the prosecution.

### 6. Same—Reasonable Doubt as Between Degrees—Charge.

On a trial for murder, a charge of the court which instructs the jury, that if they have a reasonable doubt as to the degree of murder, they will find defendant guilty of murder of the second degree; and if they have a reasonable doubt as to whether he is guilty of murder in the second degree, or manslaughter, they will find him guilty of manslaughter, is correct and unobjectionable.

### 7. Same—Charge—Self-Defense—Provoking Difficulty.

On a trial for murder, where the court has given a general charge on self-defense, and, in connection therewith, instructed the jury, in another paragraph, that, if defendant provoked the difficulty he could not avail himself of the right of self-defense, it was not error in giving two special requested instructions upon self-defense, asked for by defendant, to limit the same by a reference to his charge on provoking the difficulty.

### 8. Same.

See evidence stated in the opinion, upon which it is Held: That the court correctly charged upon the law of provoking a difficulty in connection with self-defense.

APPEAL from the District Court of Comal. Tried below before Hon. EUGENE ARCHER.

This appeal is from a conviction for murder in the second degree, the punishment being assessed at imprisonment for fifteen years in the penitentiary.

The leading features of the case will be found to be very briefly, but sufficiently, stated in the opinion of the court, and no additional statement is deemed necessary to illustrate the points decided.

*W. O. Hutchison* and *J. D. Guinn*, for appellant.

*Mann Trice*, Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was tried in the District Court of Comal County on an indictment charging him with murder, was convicted of murder in the second degree, and his punishment assessed at confinement in the penitentiary for fifteen years; and from the judgment and sentence of the lower court he prosecutes this appeal. Appellant's

first bill of exceptions relates to the overruling by the court of his motion for a continuance. Appellant sought to continue the case on account of the absence of one Mrs. W. E. Tucker, alleged to reside in Brazoria County, Texas. As to the question of diligence, we observe that the indictment in this case was presented on the 13th day of November, 1893, and no effort appears to have been exerted to procure the attendance of this witness until the 14th day of March, 1894, when an attachment issued for her to Brazoria County, Texas, at the instance of appellant. This was returned executed as to some of the witnesses named in said attachment, but no return was made as to Mrs. Tucker. On the 16th day of May, thereafter, another attachment was issued to said Brazoria County for this witness, and also for others. It was executed as to the husband of Mrs. Tucker, but there was no return as to Mrs. Tucker. The case was tried on the 28th day of May. This was not sufficient diligence. If, however, we are permitted to look beyond the motion for a continuance, and the bill of exceptions connected therewith, we find in another portion of the record that appellant proposed to prove before the jury, by the husband of the absent witness, that she was enceinte, and not able to be brought into court. Then the question occurs, is the testimony of this absent witness of such material character as to have authorized a continuance of the case, or to have invoked the action of the court in the granting of a new trial? The bill of exceptions as to the testimony of this witness shows that she would testify that deceased struck the appellant the first blow. This, as we understand it, was not a controverted issue in the case. All of the State's witnesses who spoke on this point testified to the same effect. It is further stated that it is expected to prove by this witness that this blow was struck without provocation on the part of appellant. This statement is rather a conclusion or opinion on the part of the witness, without the statement of any fact within her knowledge as to what was being said or done between the parties at the commencement of the difficulty. The record shows that this witness was at least seventy-five yards from the parties at the time of the homicide. Others were nearer, and with equal facilities for seeing and hearing, and while they testify that words passed between the parties when they first met, and before the deceased was heard to talk in a loud tone of voice, yet they were unable to relate what was said between the parties; and in the absence of some statement in the application that this witness heard and understood the language used by the parties when they met, or saw and understood all the acts of the parties at that time, we cannot assume, under the general allegation that the first blow was struck without provocation, that she saw or heard acts or words not stated in the application, and not testified to by other witnesses, with better opportunities than the absent witness. Appellant also states that he expects to prove by said absent witness that at the time he shot deceased, the deceased was in the act of attempting to draw a weapon from his pocket. Much of what was said in regard to the last mentioned testimony is ap-

plicable to this; and, in addition, we believe that, if said witness would testify as stated in the face of the record in this case, such evidence could not be regarded as probably true, as a number of persons went to the scene of the killing immediately, and no weapon was found on his person, nor about there, on the ground. In our opinion, the court correctly overruled the application for a continuance, and did not err in overruling the motion for a new trial on the grounds stated in appellant's motion for a continuance.

Appellant objects to the testimony of State's witness Brice, who stated that, in his judgment and belief, he recognized appellant at his house, with several of the Tate boys, about 11 o'clock, the night before the homicide, who came there to borrow a pistol. This testimony, in our opinion, was admissible, and the fact that the witness could not be absolutely certain in his identification of appellant only went to the weight of his evidence, and not to its admissibility. Appellant also insists that the court committed an error in permitting the State's witness Valentine Eberhard to state that he was in a position to see if deceased had anything in his hands during the time of the difficulty with appellant, and that he did not see anything. This witness had already related all that he had heard and seen between the parties at or during the time of the difficulty; had stated his position with reference to them, and their relative positions with reference to each other, together with all the surroundings, and we see no error in the court's permitting him to state that he was in such a position that he could see any weapon that the deceased may have had, and that he saw none. The same view expressed with reference to this testimony holds good to the objection made to the testimony of the witness Albert Satler, who was permitted to state that, if any weapons had been on the ground where the difficulty occurred, he would have seen them.

To our minds, clearly, the testimony offered by appellant to prove before the jury, by Tucker, that his wife was enceinte, and not able to attend court, was inadmissible. So far as we are advised by the record, no comment or criticism was made by the State as to the absence of said witness. No reason is shown why such testimony should have been adduced before the jury. The appellant contends that the court erred in its charge on reasonable doubt between murder of the first and second degrees, and urges that the same, by its verbiage, was liable to strip the appellant of his rights under the charge of manslaughter. We have carefully examined the charge of the court in this regard, and it tells the jury, in as plain words as the English language can convey, that if they believe the appellant guilty of murder, and have doubt as to the degree thereof, to find the appellant guilty of murder in the second degree; and then tells the jury that if they have a reasonable doubt as to whether appellant is guilty of murder in the second degree, upon implied malice, or of manslaughter, to find the appellant guilty of manslaughter. In this we fail to see on what grounds the appellant can complain. The appellant urges that the court committed an error, after charging the

jury on self-defense, in telling them that, if the appellant provoked the difficulty, he cannot avail himself of the right of self-defense. He also complains that the court, in giving certain charges prepared by appellant on the subject of self-defense, limited said charges by the charge on provoking a difficulty by appellant. The court gave in charge to the jury the ordinary charge on self-defense, as applicable to the particular facts of this case; and then, in a subsequent portion of the charge, in a different section, he gave a charge on self-defense, and limited the same by a charge on provoking a difficulty by appellant. Afterwards the court gave two charges on the subject of self-defense asked by appellant, and limited the same by reference to his charge on the provocation of the difficulty, as contained in subdivision 30 of the court's charge. If the facts of this case authorized a charge on provoking a difficulty, then there was no error in the court's giving said charge in the way in which it was given. Thuston v. State, 21 Tex. Crim. App., 245.

The facts of this case show a peculiar condition of things. No witness, save the appellant, who testified in his own behalf, was near enough to hear the conversation immediately preceding the homicide, although this occurred not more than fifty yards from the gin house, near which were several witnesses. The appellant himself testifies positively as to how the difficulty began. He stated: That he started from the gin house to go to his brother's, some two hundred or three hundred yards distant; that at the junction of the two paths, some fifty yards from the gin, he met deceased. He spoke to him by nodding or bowing his head. Deceased said: "Hello, you son of a bitch." Appellant said: "You ought not to call me a son of a bitch because you are a better man, for it is hard to take. Deceased said: "You will have to take it," and then struck appellant a blow with his fist in the face. Deceased then picked up a rock and threw it at appellant, who dodged it; and then appellant drew his pistol, and began firing at deceased. The fight then continued until appellant fired the third shot, which caused the death of deceased. If this version be correct—that is, if this was a casual meeting, as appellant's testimony shows—then the homicide was justifiable, and no charge was called for, except one of pure and simple self-offense, uncontrolled by any charge on provoking the difficulty. But there was other testimony in the case upon this issue; and the fact that it was of a circumstantial character does not alter its effect, as appellant seems to think, if such testimony was sufficient to raise the issue of provoking the difficulty on the part of appellant. Let us review briefly some of the facts bearing upon this proposition, and shedding light upon it. The deceased had assaulted and beat Jack Tate, a younger brother of appellant, on the evening before the homicide. Appellant was informed of this late in the evening of the day on which it occurred. Its effect was to anger and embitter appellant against deceased. On that night, about 11 o'clock, appellant and some of his brothers, went to the house of a witness in the vicinity, and endeavored to borrow a pistol, stating that J. Nowatney, the deceased,

"had beat up Jack, and they were going down to see about it." They failed to get the pistol. Early the next morning, appellant leaves his father's house (about a mile and a quarter distant), and goes to the gin, where he knows deceased is engaged at work; and the first thing he does is to go into the back room of a store situated close by, and there, without leave or license of the owner, he privately arms himself with a pistol. He then went over to the gin. The deceased had not yet arrived, as it was only about sun-up. Then appellant engaged in a conversation with one Brewer, a witness in the case, and tells him about the deceased mistreating his brother. In a short while the deceased was seen approaching the gin. The deceased was in his shirt sleeves, evidently ready for his day's work. The appellant did not wait for his arrival, but went out in the direction the deceased was coming, and met him about thirty yards from the gin. The witnesses who saw them meet, say they talked quietly at first, and they could not distinguish what was said between them, but directly they heard deceased say, "damn lie!" and "damn son of a bitch!" and then deceased struck appellant, who then drew his pistol and began firing. Deceased retreated to a live oak tree near by, and appellant pursued him, ran him around the tree several times, firing two more shots at him. The third shot struck deceased in the stomach, and he fell near the tree. Apppellant then ran off. Some of the witnesses say that, during the difficulty, deceased threw one or more rocks at appellant. The crucial point in this case, as stated before, is, who began the difficulty? and did the testimony justify the court in submitting to the jury, in connection with the charge on self-defense, a charge limiting appellant's rights of self-defense, in case they should believe that he provoked the difficulty; and in this connection the circumstances preceding the difficulty, above summarized, serve to illustrate and characterize the acts of appellant at the very time of the meeting, in the path, between him and deceased. Appellant says deceased called him a "damn son of a bitch" as soon as they met. Some of the witnesses heard this expression, but two at least say that for a little while prior thereto, the parties talked together quietly, and they then heard the expressions, "Damn lie!" "Damn son of a bitch!" The inquiry suggests itself, what brought this about? What caused these expressions of deceased? In order to solve this question, we can appeal to the antecedent acts and conduct of the parties. The appellant had a grudge against the deceased. So far as we know, the deceased had none. The appellant was armed and prepared for the conflict. The deceased was not, and, being in his shirt sleeves, appellant could almost be assured of this fact. Deceased was at his place of business. Appellant had gone there on the morning in question under a very thin and shallow pretext. Prudence would have suggested, if he was apprehensive of a difficulty with deceased, to have remained at the gin; but instead, as soon as the deceased is seen approaching, he goes out to meet him. Who, under the circumstances, was most likely to have accosted the other, and to have then done some act calcu-

lated to provoke a difficulty? Is it not the most reasonable conclusion that appellant, when he met deceased, demanded of him redress for the assault made on his brother on the day before? He was seeking him on the night of the assault with that object in view; and what evidence is there in the record that he had relinquished his purpose? Absolutely none. On the contrary, all the evidence indicates that his intent in that direction was leading him on with added momentum. And on what hypothesis can the language of deceased, first heard by the witnesses, be accounted for, except that appellant, when he first met the deceased and engaged him in a conversation, and when the witnesses say they were talking quietly, denounced the deceased for abusing his brother, who in turn called him a "damn liar?" Such, in our opinion, from the evidence in this case, was the origin of the difficulty. This was the phase of the case for the State, as presented in the evidence, and the court did not err in submitting the same to the jury, in connection with the charge on self-defense; and, the jury having found a verdict based on this theory of the case, we see no reason to disturb it. The judgment is accordingly affirmed.

*Affirmed.*