AL JAY v. THE STATE.

No. 4047. Decided May 5, 1909.

**1.—Murder—Charge of Court—Cooling Time.**

Where upon trial for murder the evidence did not show that there had been an outrage upon defendant a short while before the homicide of sufficient moment to constitute adequate cause, but showed an unprovoked attack by defendant upon deceased with a knife, and that the latter was not armed, etc., there was no error in the court's failure to charge on cooling time.

**2.—Same—Charge of Court—Manslaughter—Sudden Transport of Passion.**

Where upon trial for murder the charge of the court defining manslaughter was correct, and the only objection was to the words, "in a sudden transport of passion," there was no error. Following Waters v. State, 54 Texas Crim. Rep., 322.

**3.—Same—Self-Defense—Charge of Court—Threats.**

Where upon trial for murder the court correctly charged on the issue of self-defense and communicated threats, viewing the charge as a whole, there was no error.

**4.—Same—Evidence—Bill of Exceptions—Positions of Parties.**

Upon trial for murder there was no error in permitting the State to show the position of the parties, defendant and deceased, shortly before the homicide, in order to show that the defendant had seen that the deceased had just been disarmed, etc.; and where the matter was so stated in the court's explanation to defendant's bill of exceptions, which he accepted, there was no error.

**5.—Same—Evidence—Res Gestae—Threats.**

Upon trial for murder there was no error in admitting the declarations of the defendant, to the effect that when he was asked whether he was going to the show that he replied, "No Sir, worse than the show." This was res gestæ and was admissible to show the state of defendant's mind.

Appeal from the District Court of Bosque.   Tried below before the Hon. O. L. Lockett.

Appeal from a conviction of murder in the second degree; penalty, twenty years confinement in the penitentiary.

The opinion states the case.

*J. P. Word* and *Cureton & Cureton,* for appellant.—On question of cooling time: Ross v. State, 53 Texas Crim. Rep., 277, 109 S. W. Rep., 194; Hobbs v. State, 16 Texas Crim. App., 517; Eanes v. State, 10 Texas Crim. App., 421; Jones v. State, 33 Texas Crim. Rep., 492; Watson v. State, 50 Texas Crim. Rep., 171; 95 S. W. Rep., 115; Armstrong v. State, 50 Texas Crim. Rep., 26; 96 S. W. Rep., 15; Franks v. State, 47 Texas Crim. Rep., 638; 88 S. W. Rep., 923; Wharton's Crim. Law, 9th ed., sec. 480.  On question of charge of self-defense and threats: Jay v. State, 52 Texas Crim. Rep., 567; 109 S. W. Rep., 131; Swain v. State, 48 Texas Crim. Rep., 98; 86 S. W. Rep., 335; Gonzales v. State, 28 Texas Crim. App., 130; Alexander v. State, 25 Texas Crim. Rep., 260.  On question of admitting evidence as to defendant's declarations: Gaines v. State, 53 S. W. Rep., 623; Hall v. State, 43 Texas Crim. Rep., 257; 64 S. W. Rep., 248; Strange v. State, 38 Texas Crim. Rep., 280; 42 S. W. Rep., 551; Holley v. State, 39 Texas Crim. Rep., 301; 46 S. W. Rep., 39.  On question of testimony of disarmament of deceased: Long v. State, 23 Texas Crim. App., 692; Wicks v. State, 28 Texas Crim. App., 48; Dugan v. State, 39 Texas Crim. Rep., 115; Rhodes v. State, 39 Texas Crim. Rep., 332; Ray v. State, 43 Texas Crim. Rep., 234; 64 S. W. Rep., 1057.

*F. J. McCord,* Assistant Attorney-General, and *E. B. Robertson,* county attorney, for the State.

RAMSEY, JUDGE.—This is the second appeal of this case.  The opinion on the first appeal is reported in volume 52, Texas Crim.

Rep., 567. On original submission the judgment of conviction assessing the punishment of appellant at life time was affirmed. On motion for rehearing, however, the judgment was reversed and remanded, on account of the failure of the court to give, in charge to the jury, the doctrine of threats in connection with the issue of self-defense. The facts on the present appeal are not essentially different from those on the first hearing. On the last trial appellant, however, was convicted of murder in the second degree, and his punishment assessed at confinement in the penitentiary for a period of twenty years. The only respect in which, so far as the law of the case is concerned, a different rule could possibly obtain, is the fact that appellant accounts for himself between the time of the first altercation with deceased, Arthur Lockhart, about noon, aad the time of the homicide, which occurred at a time left a little indefinite, but probably not very far from 3 o'clock in the afternoon.

On this appeal, as on the former appeal, appellant challenges the correctness of the court's charge on the ground that the court failed to give, in charge to the jury, any instruction with reference to cooling time, and refused to give the special instructions requested by appellant pertinently presenting that issue. This matter was carefully considered on the former appeal, and that matter ruled adversely to appellant. Discussing this matter, Judge Brooks, speaking for the court, said: "The only other question we deem necessary to pass upon is the tenth paragraph of the motion for a new trial, wherein complaint is made that the court erred in his charge, and particularly those paragraphs of same charging on murder in the first degree and second degree; and on manslaughter, in not charging on the material issue of cooling time. This issue was not in this case. The facts show, in substance, that appellant and deceased had been enemies for quite awhile; had had previous rows and jows some time before the difficulty. On the morning of the difficulty, about 12 o'clock, appellant and deceased met. Deceased drew his pistol and cursed appellant. Appellant went off and reported deceased to the constable, and told the constable deceased had a pistol. Subsequently this pistol was taken from deceased by third parties, together with a bottle of whisky. About 3 o'clock in the afternoon deceased, in company with his sister and her child, each having hold of the hand of the child, were about to enter a little show in the town of Morgan; just as they were in the act of entering appellant rushed upon deceased, and, as he claims, deceased made demonstration as though to draw a weapon. The State's case, however, shows that he grabbed deceased by the arm and began cutting him, deceased endeavoring to defend himself with his hands. Other parties interfered, including deceased's sister, and tried to prevent appellant from stabbing deceased, but he finally did so, stabbing him in the left side, from which wound he died in a few moments. In order to constitute cooling time there must have been an outrage upon appellant a

short while before the homicide of sufficient moment to constitute adequate cause, and thereby produce that degree of anger, rage, sudden resentment and terror that renders the mind incapable of cool reflection. The facts above detailed do not constitute such adequate cause, and hence the issue of cooling time was not given." We think these remarks directly applicable to the case as made on this trial, which, as stated, is not essentially different from the facts on the former appeal, except the testimony of the witnesses shortening the time somewhat between the time they first met and the time of the homicide, and the testimony tends to show during this time some state of excitement on the part of appellant. Carefully considering the whole record, however, we do not believe the court was either required or would have been justified, under the facts, in charging on this issue.

Complaint is made of the charge of the court on the subject of manslaughter, wherein the court in the fourteenth paragraph of the court's charge instructs the jury as follows: "If you believe from the evidence, beyond a reasonable doubt, that the defendant, in a sudden transport of passion, aroused by adequate cause, as hereinbefore explained, and not in self-defense, as hereinafter explained, did, with a knife, cut and stab, and thereby kill Arthur Lockhart, the deceased, in Bosque County, Texas, as charged in the indictment, and that said knife was a deadly weapon as herein defined; then if you have found each and all of said facts true, then you will find the defendant guilty of manslaughter, and assess his punishment at confinement in the State penitentiary for any period of time not less than two or more than five years." The charge of the court defining manslaughter is in every other respect correct, nor could there be any substantial objection to it. The use of the particular words objected to, "in a sudden transport of passion," have not infrequently been condemned, but on review of the whole matter in the case of Waters v. State, 54 Texas Crim. Rep., 322; 114 S. W. Rep., 628, this was held not to be reversible error. The matter is there fully discussed, and we think it unnecessary to elaborate our views in respect to the question.

The other complaints of the charge of the court upon this subject, we think, are hypercritical and without merit.

Complaint is made also of the fifteenth paragraph of the court's charge, which is as follows: "On self-defense you are instructed that homicide committed in self-defense is not unlawful, but is justifiable, and therefore is excused by law, but the mere fear upon the part of the defendant that the deceased, Arthur Lockhart, might do him serious bodily injury, or kill him, would not justify him in slaying the deceased, nor would the defendant be justified in cutting deceased if, at the time he did so, he was then in no real danger of suffering death or serious bodily injury from the deceased, but to justify the defendant in taking the life of the deceased it must have reasonably appeared to the defendant, at the time of the difficulty, and from the acts of the deceased, that it was the deceased's purpose then and there

to kill, or to do the defendant some serious bodily injury. You are further instructed that the reasonable apprehension of death or serious bodily injury will excuse a person in using all necessary means to protect his life or his person from serious bodily injury, and it is not necessary that there should be actual danger, provided that the defendant at the time acted upon a reasonable apprehension of danger, as it appeared to him at the time of the difficulty, and in such case the party acting under such fear of danger, or apparent danger, is in no event bound to retreat in order to avoid the necessity of killing his assailant. If, therefore, you believe from the evidence that, at the time of the killing, the deceased, Arthur Lockhart, was then about to, or was in the act of, making an attack on the defendant, or was then about to make an assault on him, or if it reasonably appeared to the defendant, from the acts then done by the deceased at the time of the difficulty, that he was then about to assault the defendant, which, from the manner of the assault, or the threatening assault, or that the attack that was then about to be made, if one was then about to be made, and from all the facts and circumstances surrounding the parties at the time it caused the defendant to have a reasonable expectation or fear of death or serious bodily injury, and that, acting under such reasonable expectation or fear, whether real or apparent, the defendant, in self-defense only, cut and stabbed the deceased with a knife, or if you have a reasonable doubt as to whether he did so or not, then you will give the defendant the benefit of such doubt, and find him not guilty." This charge is objected to for the reason, as claimed, that it was a limitation of appellant's right of self-defense, because it excluded from the jury the law of threats and the right of the appellant to act, and to take the life of deceased, if it reasonably appeared to him that the deceased was doing some act from which the appellant might reasonably infer was an attempt on the part of deceased to carry out his previous threats. Immediately following the charge complained of the court instructed the jury as follows: "When a person is charged with an unlawful killing, and seeks to justify on the grounds of a threat or threats against his own life, he is permitted to introduce evidence of such threats made by the party killed, but the threats shall not be regarded as affording a justification which will constitute self-defense, unless it be shown by the evidence that the defendant had been informed of the threats before the difficulty, and further, that at the time of the difficulty the person alleged to be injured did, by some act then done, manifested an intention then to execute the threats previously so made. The law does not state or define more definitely the act to be done at the time of the killing, but it must be some act which is reasonably calculated to induce the belief in the mind of the defendant that the deceased was then intending to put into execution the threats previously made, and the defendant must believe that such threats were seriously made by the deceased; and if you believe said facts are true, or if you have a reasonable

doubt of the facts being true, you will find defendant not guilty." We think, considered together, that the charge of the court sufficiently guarded the rights of appellant, and contained, when considered to-gether, a sufficient submission of the issue of self-defense as applied to the doctrine of threats, and without considering the question of threats.

During the trial the State sought to prove by one Jobe Giden that, about fifteen minutes before the homicide, that he, appellant and Dan Jay were standing down south of the scene of the homicide, about thirty or forty yards, near the west side of the big tent on the show grounds, and that he, appellant and Dan Jay were in conversation at said place; whereupon the State offered to prove by said Giden that, while he was talking to appellant and said Dan Jay, that he saw the deceased, Arthur Lockhart, Willie Fuller and Agnes Phelps coming from toward Bobbie Harris' house and going toward the show grounds. This testimony was objected to at the time, because same was imma-terial, and could not bind the appellant, and was prejudicial, unless the witness stated that he called the appellant's attention to said par-ties leaving Harris' house, which the witness did not testify to. This bill of exceptions contains the following endorsement: "Allowed, with the explanation that the record shows that Jobe Giden testified that, while he was talking to Al and Dan Jay, his face was turned west, and that Al's face was turned west, and that Arthur Lockhart and his sister and Willie Fuller were coming from that direction, and that they were in plain view of Jobe Giden at their time, and that Al was facing them and his face was turned in their direction." Closely re-lated to this same question, it appears that while the witness, Agnes Phelps, was on the witness stand, the State offered to show by her, and did show by her, that shortly before the homicide she and the de-ceased, Arthur Lockhart, and Willie Fuller, while on their way to the show grounds, passed Bobbie Harris' house, and were stopped at or near Harris' house, and that Bobbie Harris and the appellant's brother, Ike Jay, took a pistol off of the deceased, Arthur Lockhart, at said time. This evidence was objected to at the time because it was irrelevant and immaterial, and not binding on appellant, because done in appellant's absence, because hearsay, and calculated to prejudice the jury against the appellant. This bill was approved with the fol-lowing endorsement: "Allowed, see explanation to bill No. 3," which is the bill with reference to the testimony of Jobe Giden. It is ob-vious that this testimony was not admissible except upon the theory and assumption that the attitude and position of the parties was such as to show or justify the fair inference that the deceased was seen by appellant at the time. The statement of the court, in his explanation to bill of exceptions No. 3, in reference to the testimony of Jobe Giden, undoubtedly shows such a situation of affairs as to compel the belief that at that time appellant saw deceased and the other parties referred to. The explanation of the court in approving the last bill of excep-tions is only consistent with the belief and theory that the situation

of the parties must have been such as that appellant was in position to have seen, and did see, the disarmament of the deceased, and is in substance a finding and statement to this effect. We feel that we are committed by the holdings of this court to determine the matter solely with reference to the bills of exceptions. Such bills, it has been uniformly held, should be so explicit as to enable the court to fully understand all the facts upon which the conviction depends. Livar v. State, 26 Texas Crim. App., 115; Walker v. State, 19 Texas Crim. App., 176. Again, it has been held that, upon appeal, the court will not supply omissions in bills of exception, nor aid such bills by inference or presumptions. McGlasson v. State, 38 Texas Crim. Rep., 351; Hooper v. State, 29 Texas Crim. App., 614. The rule also seems to be that where a bill of exceptions contradicts the statement of facts in any specified particular, it will control, and be held to state correctly the disputed matter. Hardy v. State, 31 Texas Crim. Rep., 289; Ezzell v. State, 29 Texas Crim. App., 521; Briscoe v. State, 27 Texas Crim. App., 193. We have, however, carefully examined the record, and are not prepared to say that the statement and explanation of the court is not entirely correct, though there is some confusion in the record as to the situation of the parties. There is no map contained in the statement of facts, and there are so many references to Harris' house, the Houston & T. C. Railway track crossing, doll racks, and side-shows, and other objects, that we are not clear, really, as to just what the evidence does show in respect to the position of these parties at the time of the disarmament. In such situation we feel that we are bound and committed to follow the statements of the court in allowing the bills of exception, which were accepted by appellant, and in the condition the record comes to us we would not be justified in reversing the case on this ground.

Again, during the trial, it was shown by the State that, sometime before the homicide, but on the same day, and at the time appellant passed one Lassiter, going in the direction of the residence of Mr. Oran, who asked appellant if he was going to the show, he replied, "No, sir—worse than the show." This evidence was objected to at the time on the ground that it was immaterial, and throws no light on the transaction, because the conversation was indefinite, and could not be converted into a threat, and was a conclusion, and because same was not sufficiently connected with the death of the deceased to be admissible as a part of the res gestæ of the transaction, and because it was prejudicial to the rights of the defendant. This is allowed by the court, with the explanation that the conversation occurred a short time before the killing, and while defendant was on his way to the show grounds. We think this testimony admissible in view of the explanation of the court, both as part of the res gestæ, and admissible in any event as tending to show the state of mind of appellant. It was not, perhaps, a threat, and yet it showed quite clearly the condition of appellant's mind, and threw strong light, as we think, on his purpose

and intention at the time, and was important for the jury to consider in connection with the grade of the homicide, as well as on the issue of self-defense.

There are other matters and errors assigned, but none of them we believe of any merit, or of sufficient importance, to require a discussion. The only matter about which we have hesitated is in respect to the testimony admitted by the court touching the disarmament of the deceased, Arthur Lockhart, but in the shape the record comes before us we do not believe we should be justified, in view of the explanation of the court, in setting aside the judgment and reversing the case.

Finding no error in the proceedings of the court below, it is ordered that the judgment of conviction be, and the same is, hereby in all things affirmed.

*Affirmed.*