JIM CASTLEBERRY v. THE STATE.

No. 4956.   Decided November 20, 1918.

1.—Murder—Evidence—Character of Deceased.

Where, upon trial of murder and a conviction of manslaughter, the defendant sought to establish the fact that the deceased had killed three men, this testimony was an attack upon the character of deceased, and the State was justified on cross-examination of the defendant's witness to develop the circumstances under which the three men were killed. Following Hysaw v. State, 69 Texas Crim. Rep., 562, and other cases.

2.—Same—Evidence—Rebuttal—Bill of Exceptions.

Upon trial of murder, there was no error in permitting the State to rebut the theory of the defendant that the deceased was armed and made a demonstration at the time of the homicide, by evidence tending to show that the deceased was not armed; and even if the bill of exceptions had not been defective, which it was, the statement of facts would not show reversible error. Following Tate v. State, 35 Texas Crim. Rep., 231, and other cases.

3.—Same—Evidence—Postponement—Habits of Deceased.

Where, upon trial of murder and a conviction of manslaughter, the fact that the deceased was in the habit of carrying a pistol was not a controverted issue, and such testimony was only of an impeaching nature, and there was an absence of allegation of diligence to procure the testimony of the absent witness, there was no error in overruling the motion to postpone the trial on that account.

4.—Same—Evidence—Postponement—Reputation of Witness.

Where a predicate for the impeachment of defendant's witness, who was introduced by the defendant at an early stage of the trial, was laid by the State, giving defendant notice of such impeachment, there was no error in overruling an application to postpone the trial to obtain witnesses to support the reputation for truth and veracity of said defendant's witness. Following Yarborough v. State, 66 Texas Crim. Rep., 324, and other cases.

5.—Same—Evidence—Postponement—Judicial Discretion—Rebuttal.

Where defendant sought to prove that about an hour after the homicide the sheriff arrived at the scene and made no examination for arms, but simply examined the wounds of the deceased, and this was important, in view of rebuttal testimony by the State that deceased was not armed, and asked a postponement to obtain such testimony, but there was no conflict in the testimony about this fact, and there was nothing to show any injury resulting to the defendant on account of the absence of such testimony, and no allegation of surprise or abuse of discretion by the court, there was no reversible error in overruling the motion to postpone.

6.—Same—Evidence—Prior Altercation.

Upon trial of murder and a conviction of manslaughter, there was no error in admitting testimony touching a prior altercation, during which defendant was present and could have seen and heard all that transpired.

7.—Same—Evidence—Non-expert Opinion.—Location of Wounds—Harmless Error.

Upon trial of murder and a conviction of manslaughter, there was no error in admitting testimony that the witness examined the wounds upon the body of the deceased, and that one appeared to enter about the top of the shoulder and ranged downward, on the ground that this was an opinion of a non-expert witness, as the bill of exceptions was defective, and if there was error it was harmless under the facts of the instant case.

8.—Same—Stating Facts in Opinion.

Where this court was in error in the original opinion as to stating the ownership of the pistol used, the same is now here corrected, but does not change the conclusion of the court.

9.—Same—Postponement—Discretion of Court.

Where the question of postponement comes before this court for review, of the action of the trial judge, the matter must be tested by its legal merits, and this court can not hold that the application for postponement presents such grounds as would authorize it to hold, as a matter of law, that the trial court abused his discretion in overruling the same.

Appeal from the District Court of Nacogdoches. Tried below before the Hon. L. D. Guinn.

Appeal from a conviction of manslaughter; penalty, four years imprisonment in the penitentiary.

The State's testimony shows that there occurred a prior wordy altercation between the parties and others, near a little church where the people had collected to attend Sunday school; that deceased and his brother rode away, but afterwards returned and that deceased spoke to the defendant and offered his right hand, holding his hat in his left hand; that the defendant refused to shake hands with deceased and that thereupon deceased shook hands with the uncle of the defendant, and that just after this, when both hands of deceased were down, defendant shot and killed him.

The defendant contended by his testimony and that of his witnesses that deceased was a dangerous man and had made threats against his father and himself; that when deceased and his brother left he suspected that they were going after arms, and that they had arms when they returned, and that deceased advanced upon him in a threatening manner as though he was attempting to draw a pistol, when he shot him. This, with the facts stated in the opinion, is a sufficient statement to understand the case.

*Geo. S. King* and *A. A. Seale*, for appellant.—On question of dangerous character of deceased: Wooley v. State, 64 S. W. Rep., 1054; Pratt v. State, 53 Texas Crim. Rep., 281, 109 S. W. Rep., 138; Gant v. State, 55 Texas Crim. Rep., 284, 116 S. W. Rep., 801; Bradly v. State, 60 Texas Crim. Rep., 398, 132 S. W. Rep., 484.

On question of opinion of witness: Hardin v. State, 49 S. W. Rep., 607; Green v. State, 90 S. W. Rep., .1115; Dowell v. State, 58 Texas Crim. Rep., 482, 126 S. W. Rep., 871.

On question of postponement: Bennett v. State, 39 Texas Crim. Rep., 639.

On question of testimony of prior wordy altercation: Roquemore v. State, 50 Texas Crim. Rep., 542, 99 S. W. Rep., 547.

On question of location of wounds by opinion witness: Pearson v. State, 56 Texas Crim. Rep., 607; Barnard v. State, 45 id., 67.

*E. B. Hendricks,* Assistant Attorney General, for the State.

MORROW, JUDGE.—Indicted for murder, appellant was convicted of manslaughter and his punishment assessed at confinement in the penitentiary for four years.

The killing of deceased by appellant was not controverted, but appellant relied upon justification under the law of self-defense. There were facts supporting that issue and it was submitted to the jury. Appellant testified he had heard that the deceased had killed three men, but possessed no information as to the circumstances attending the homicides. In addition to this, however, the appellant sought to establish the fact that the deceased had killed three men by the testimony of deceased's brother. This evidence was an attack upon the character of deceased, which justified the State in cross-examination of the witness to develop the circumstances under which the three men were killed. Hysaw v. State, 69 Texas Crim. Rep., 562, 155 S. W. Rep., 941; Bullock v. State, 73 Texas Crim. Rep., 419, 165 S. W. Rep., 196.

There was no error in permitting the State to rebut the theory and evidence of the appellant, that the deceased was armed and made a demonstration at the time of the homicide, by evidence tending to show that the deceased was not armed. The bill complaining that the court permitted the brother of deceased to give his conclusion that the deceased was not armed is too meager in setting out the facts. In examining the statement of facts, to which the trial judge refers in his qualification, it is apparent that the witness put the jury in possession of all the facts upon which he based his statement that his brother did not have a pistol. The testimony of this witness is cumulative. We think if the bill was as full as the statement of facts it would not show reversible error. See Tate v. State, 35 Texas Crim. Rep., 231; Fulcher v. State, 28 Texas Crim. App., 465; Williams v. State, 60 Texas Crim. Rep., 453; Branch's Ann. P. C., sec. 210, p. 134.

It appears that at 10:30 o'clock Saturday night the appellant made a verbal request of the court to postpone further consideration of the case until the succeeding Monday. As presented it appears the court declined to grant the request but did postpone the case; at least it was not submitted to the jury until Monday morning, at which time appellant presented a written motion to postpone and for process for various witnesses. One ground in the motion related to the alleged fact that a witness named Clevenger had testified for the appellant

that some two or three weeks before the homicide he saw the deceased at a church; that he was in possession of a pistol, which he threw in the lap of a young lady named Junde. That Miss Junde, near the conclusion of the trial, contradicted Clevenger's testimony, and it was alleged that Mrs. Clevenger would testify to a conversation with Miss Junde admitting that the occurrence as testified by Clevenger happened. There is an absence of allegation of diligence to procure the testimony of Mrs. Clevenger. Moreover, her testimony was of an impeaching nature only. Appellant was entitled to prove that the deceased was in the habit of carrying a pistol. Wharton's Crim. Ev., sec. 927, p. 1762; Lilley v. State, 20 Texas Crim. App., 1; Jay v. State, 56 Texas Crim. Rep., 111. If relevant Clevenger's testimony was on the issue of this habit. The fact that the deceased was in the habit of carrying a pistol was not a controverted issue. The State controverted the fact that he had a pistol at the time he was killed, but that he frequently carried one to church and elsewhere was conceded by his brother and other State witnesses, and apparently an established fact.

A postponement was also sought to obtain witnesses to support the reputation for truth and veracity of appellant's witness D. Pitts, who testified that at the time the fatal shot was fired deceased had his hand in his bosom, and that the witness saw the handle of a pistol therein. A predicate for the impeachment of this witness, who was introduced by the appellant at an early stage of the trial, was laid by the State, the effect of which predicate was to give appellant notice that the State would undertake to show that the witness, in giving his testimony before the grand jury, had omitted to state that he had seen the pistol on the person of the deceased. Subsequently, members of the grand jury, who were presumably witnesses duly subpoenaed, testified supporting this theory of the State, and it was by reason of this impeachment that appellant sought to issue process for witnesses to sustain the reputation of Pitts. We think the predicate mentioned, in connection with the fact that in the cross-examination of the witness Pitts the State by innuendo suggested an absence of good faith of said witness, and directed attention to the fact the witness was related to appellant, and that the homicide had taken place with a pistol belonging to Pitts, was sufficient to make it incumbent upon appellant to anticipate the need of character witnesses. See Yarborough v. State, 66 Texas Crim. Rep., 324, 147 S. W. Rep., 270; Miller v. State, 32 Texas Crim. Rep., 319, and other cases cited in Vernon's Crim. Stats., vol. 2, p. 317, note 24.

The sheriff, Spradley, was the first witness for appellant. He gave no testimony touching the examination of the body of deceased He was not present on Saturday night at the time of the verbal motion to postpone, and in that and a subsequent motion there is contained the statement that appellant desired his attendance to show that about an hour after the homicide he arrived at the scene and made no examination for arms but simply to examine the wounds. Appellant's argument suggests that this testimony became important in view of rebuttal

testimony by the State. The testimony is not set out in the motion, but an examination of the statement of facts discloses that one witness testified as follows: "Most of us felt over the body, and I was there when Mr. Spradley came, and I saw him feel over the body. I saw Mr. Spradley take some things out of his pockets. I think maybe he had two dollars and a few cents, and a few other little trinkets. I never saw his coat taken off,—it wasn't taken off there. There was no weapon on or about the body when we went over there or when Mr. Spradley came." Appellant's theory was that deceased's pistol was taken from his person by his brother, who was standing nearby at the time of the homicide. He came to the scene with the deceased, was armed himself, and fired some shots, one of which wounded the uncle of appellant. A number of eyewitnesses both for the State and appellant testified they were present and saw the body of deceased, some of them going to make an examination very soon after the homicide. The brother of deceased was shown by his own admission and other testimony to have gone to the body immediately after the homicide. It was uncontroverted that these examinations were made and the brother of deceased had left the scene of the homicide before the sheriff arrived. There being no conflict in the evidence touching the fact that the sheriff did not arrive until after the brother of deceased had gone, and until after many other persons had examined the body, and no material conflict between what the appellant in his motion says he wanted to prove by the sheriff and the testimony of others as to what the sheriff did, we are unable to conclude that appellant's failure to have the testimony of the sheriff resulted in such injury as would authorize a reversal. The motion does not disclose that any efforts were made by appellant between the adjournment Saturday night and the time that he presented his motion Monday morning to secure the attendance of the sheriff. The motion contains none of the elements of surprise which, under article 616, C. C. P., authorizes a continuance upon the happening of some unexpected occurrence which no reasonable diligence could have anticipated. In truth, the motion did not contain the elements requisite in an application for continuance before the beginning of the trial. The matter of postponement was within the judicial discretion of the court. Branch's Ann. P. C., sec. 340. It is clear that the bill fails to show such abuse of it as would authorize this court to reverse.

The bill complaining of the admission of testimony touching an altercation with one Davidson is quite meager in setting out the facts, and is qualified by the judge trying the case with the statement that appellant was present at the time the conversation took place and heard or could have heard it all. In our examination of the statement of facts we find that the witness mentioned in the bill heard some words between appellant, his brother and Davidson. Quoting: "I heard an altercation or quarrel they all had there. Davidson inquired: 'Where is Pistol Pete. God damn him, I want to kill him.' Appellant, who

was sitting in a buggy, got out of the buggy and had his knife open. Deceased was standing near, and as appellant got out of the buggy appellant said: 'I never come down here to be run over by any of you sons of bitches,' nodding his head towards deceased, Davidson and others." After some further words both deceased and appellant left the grounds, deceased going on horseback towards home. Appellant claims that before deceased left he told appellant he would return and kill him. There was also testimony introduced by appellant that in leaving deceased made a similar threat to other witnesses. There was testimony that when deceased reached home he was crying; that he changed clothes and returned. Appellant, in his testimony, refers to the altercation, and said that while he and Davidson were talking deceased came up and entered into the controversy, and left with the words: "By God, I don't have to let anybody alone. You stay here until I get back." Appellant testified that believing deceased would return he armed himself for his own protection. It was shown that deceased and his brother did return; that they approached appellant, the evidence being conflicting as to what occurred. It is the State's theory that deceased approached appellant and sought to shake hands with him, making no hostile demonstration. Appellant insists that he declined to shake hands with deceased, believing that both he and his brother were armed, and that his proposal to shake hands was in order to obtain the advantage; that at the time the shot was fired deceased, using threatening language, thrust his hand into his bosom as though to draw a weapon.

There is complaint made that one of the witnesses testified that he examined the wounds upon the body of deceased, and that one appeared to enter about the top of the shoulder and range downward. The objection urged is that this was an opinion of a non-expert witness, and harmful because in conflict with appellant's theory as to the attitude of deceased at the time the shots were fired. The bill does not affirmatively show that the witness was not an expert, and did not qualify or give the testimony. The qualification of a witness is a matter for the court, and a bill of exceptions should contain sufficient facts verified in some manner prescribed by law to negative the presumption which obtains in favor of the correctness of the court's ruling. Branch's Ann. P. C., sec. 207; also sec. 209. The theory upon which the evidence was harmful to appellant is not made clear in the bill of exceptions. Appellant shot three times, and two shots struck deceased. He was standing facing appellant at the time the shooting began and sank down. It was not clear that the fact that one of the shots struck the shoulder and ranged downward would necessarily be in conflict with appellant's theory.

The matters complained of in the record which are not discussed have been carefully examined, and our conclusion is that no reversible error is disclosed.

The judgment of the lower court is affirmed.

*Affirmed.*

### ON REHEARING.

#### November 20, 1918.

MORROW, JUDGE.—We were in error in stating in the original opinion that the homicide took place with a pistol belonging to the witness D. Pitts. The record shows that the pistol was the property of appellant's father and had been left at the residence of D. Pitts, and was obtained by appellant therefrom a short time before the homicide.

The statement of facts indicates that about a dozen witnesses testified after defendant's witness Pitts left the witness stand. The conflict between this witness' testimony and that of numerous other eye-witnesses touching the possession of the pistol by the deceased at the time of the homicide, in connection with the fact that while he was on the witness stand the State laid a predicate for his impeachment by evidence that his testimony at the trial was materially different from that given before the grand jury, and the fact that members of the grand jury were present as witnesses, was sufficient, we think, to suggest to appellant that his witness Pitts would be impeached, and to have required him in the exercise of diligence to have had subpoenas then issued for witnesses supporting his reputation for truth and veracity. Pitts was a resident of the community in which the homicide took place, and appellant sought, after the introduction of evidence had been concluded, to subpoena witnesses to prove his good reputation for truth and veracity. The court in allowing the bill states that two-thirds of the community, a hundred or two of them, were present at the trial on Saturday night when the motion to postpone was first presented. The written motion followed on Monday and states that appellant sought subpoenas for certain named witnesses to prove the good reputation in the respect mentioned of Pitts. The application fails to show where the witnesses reside and to what county he sought to have the subpoenas issued. It fails to show that the same testimony can not be had from other witnesses present, or to account for the delay in issuing the subpoenas otherwise than by the allegations showing that after Pitts had given important testimony the State introduced members of the grand jury to impeach him. Coming before this court for review of the action of the trial judge, the matter must be tested by its legal merits, and we can not hold that the application presents such grounds as would authorize this court to hold, as a matter of law, that the trial court abused his discretion in refusing the motion to postpone.

The motion for rehearing is overruled.

*Overruled.*