BEVERLY BORROUM v. THE STATE.

No. 10215.   Delivered June 8, 1927.
Rehearing denied June 28, 1928.

The opinion states the case.

*H. S. Bonham* and *James D. Daugherty* of Beeville, for appellant.

*Sam D. Stinson,* State's Attorney, and *Robert M. Lyles,* Assistant State's Attorney, for the State.

BETHEA, JUDGE.—The appellant was convicted of manslaughter, and his punishment fixed at five years in the penitentiary.

The killing occurred early in the morning on premises belonging to appellant. The trouble arose over a mule breaking into a field. Deceased was a tenant farmer on appellant's place, and a dispute arose over whose duty it was to repair the fence. During the course of the argument, deceased advanced on appellant with a bar of iron drawn back and said, "You are a God damned liar." Appellant then turned, jumped over the fence, and ran to his house. Deceased returned to his milking. Appellant returned to the lot in a minute or two with his gun in his hands, and another conversation took place. The appellant then walked around on the other side of the barn, where his wife plead with him and asked him to leave, to which he replied that he wasn't going to bother anyone. Appellant's wife then grabbed the gun, which discharged into the air. Appellant reloaded the gun, and his wife grabbed it again, saying, "Come,

let's go—give me the gun," and the gun went off a second time, this time the shot going in the direction of deceased. Appellant reloaded the gun again, saying, "Just get away and leave me alone." At this point, the deceased jumped up, rushed toward appellant with the iron bar drawn back, and said, "You God damned cowardly son-of-a-bitch, you are not game enough to shoot." Appellant then fired the shot that killed deceased. This testimony comes from appellant and his wife.

When appellant ran to the house to get his gun, deceased, retaining possession of the bar of iron, returned to his milking, and, so far as the record shows, did nothing until after the gun had been fired the second time and in his direction.

Bill of Exception No. 1 complains of the action of the trial judge in overruling appellant's motion for a new trial on the ground that the jury had received other testimony after they had retired to deliberate. The proof on the motion shows that after the jury had deliberated for some time they reported to the court that they could not agree, and the court instructed them to return and continue their deliberations; and that after they returned to the jury room to continue their deliberations the juror Cowie stated in the presence and hearing of the other jurors that he had been in the army for some considerable time and gave the opinion that one shot as deceased was would not stagger back but would fall practically where he was shot. This was complained of as violative of the rule against the reception of new and material evidence by the jury after retirement. Appellant claimed this evidence was material on the point as to whether or not deceased was advancing on appellant at the time he was shot. In our opinion it does not make any difference under the facts of this case whether the deceased was advancing upon appellant or not at the time the shot was fired. If the appellant shot deceased while the latter was milking his cow, he would be guilty of murder; and if he shot deceased while the latter was advancing upon him with the bar of iron, after appellant's gun had been fired twice, the last shot being fired in the direction of deceased, then appellant would unquestionably be guilty of manslaughter. The jury having found appellant guilty of manslaughter, we fail to see where this statement of the juror Cowie could have worked any injury to the appellant.

Bill of Exception No. 2 complains of the action of the trial court in extending the term of court for the purpose of considering and allowing an investigation of certain matters set up in appellant's mo-

tion for a new trial, together with matters contained in the affidavits of the two jurors. This bill presents no error.

The disposition of Bill No. 1 disposes of Bill No. 2.

Bills of Exception Nos. 3, 4, and 6 are in question and answer form, and we find no certificate of the trial judge that such questions and answers are necessary in order to elucidate the fact or question involved. We are therefore not authorized to consider same. Art. 760, C. C. P.; Long v. State, 288 S. W. 1074, and authorities therein cited.

Bill of Exception No. 7 complains of the action of the trial court in permitting counsel for the state to withdraw his announcement that the state rested, and in allowing the state to introduce certain additional testimony. We are unable to agree with appellant in this contention, for the reason that this is a matter largely within the discretion of the trial judge, and the bill does not show an abuse of that discretion.

Bill No. 8, as qualified by the trial judge, presents no error.

Appellant filed objection to the charge on the law of self-defense, and refers us to Lyons v. State, 159 S. W. 1070, as supporting his criticism. We have examined that case, and also those of Carson v. State, 123 S. W. 590, and Polk v. State, 132 S. W. 767. Reference to the main charge on self-defense discloses full and complete instructions to the jury that appellant would have been justified in slaying of the deceased, Dallas Cox, if deceased was making, *OR ABOUT TO MAKE,* an attack on him, as viewed by appellant, from his standpoint. In this respect it differs from the charge in the Lyons case. Further reference to the main charge reveals that the court did not limit appellant's right of self-defense by any charge on provoking the difficulty.

The undisputed evidence developed by the appellant and his wife called for a charge limiting appellant's right of self-defense by a charge predicated on the idea that appellant provoked the difficulty, and if the court had given such a charge as the facts warranted, then, and in that event, it would have been proper for the court to have told the jury under proper instructions that the appellant would not forfeit his right of self-defense by arming himself in order to defend himself in case deceased Cox did assault him with a bar of iron or any other deadly weapon.

As we view it, the undisputed evidence clearly brings this case within the law of provoking the difficulty, and the right of perfect self-defense is not in the case, and the charge on perfect self-defense

complained of by appellant was more favorable to appellant than the law and the undisputed facts justified. Williford v. State, 38 Tex. Cr. R. 393; Carlile v. State, 96 Tex. Cr. R. 37, and cases cited.

The misconduct of the juror Cowie discussed above affected the question of perfect self-defense alone, and the undisputed evidence of appellant and his wife places this case beyond the realm of perfect self-defense. Therefore, the error would be harmless.

What has been said above regarding the law of self-defense disposes of appellant's complaint of the court's failure to give special charges Nos. 1, 3, and 4, relating to the law of self-defense. However, these charges were fully covered in the court's main charge.

There being no errors in the record, and the facts being amply sufficient to support the verdict, the judgment of the trial court is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—In disposing of the complaint presented in bill of exception number one, in our original opinion we used the following language:

"If appellant shot the deceased while the latter was advancing upon him with the bar of iron after appellant's gun had been fired twice, the last shot being fired in the direction of deceased, then appellant would unquestionably be guilty of manslaughter."

Appellant urges in his motion for rehearing that the view thus expressed could only be based upon the assumption that the testimony of appellant and his wife to the effect that the two first shots were fired accidentally, is untrue. The language quoted was used in connection with the discussion of appellant's complaint that the jury received evidence of a material character after retiring to consider their verdict. Whether what occurred in the jury room can be said to amount to the reception of additional evidence was not discussed. If it was not additional evidence but only the expression of a juror's opinion given in argument during the deliberation of the jury it would not be error even if appellant should be right in the contention that he now urges. No one was present at the killing save appellant and his wife and deceased. The body of deceased was found lying near the point where he had been milking his cow.

Appellant and his wife testified that the gun in appellant's hands was fired twice by accident during a scuffle in which the wife was attempting to get the gun from appellant; that after the second shot which passed near deceased he got up from his milking and advanced toward appellant with a piece of iron drawn, at which time appellant shot him, and that deceased staggered back a few steps and fell. Upon the trial no evidence was introduced as to whether one shot as was deceased would fall in his tracks or as to the probability or possibility of him staggering back before falling. The case went to the jury upon the facts related. During the jury's deliberation the juror Cowie made the statement set out in our original opinion. The facts seem to bring the case fairly within the principle announced in Frazier v. State, 99 Tex. Cr. R. 89, 268 S. W. 164 and Nelson v. State, 99 Tex. Cr. R. 564, 270 S. W. 865. We think the expression complained of may be regarded as the opinion of the juror in argument in the jury room rather than as additional evidence.

The motion for rehearing is overruled.

*Overruled.*

### CONCURRING OPINION.

MORROW, Presiding Judge.—Without restating the testimony, I desire to supplement the opinion rendered with the following statement of the reasons which impel me to concur in the overruling of the motion for rehearing: I gather from the testimony that it was the appellant who first mentioned to Cox the subject-matter of the quarrel, namely, the mules topping the fence. It was he who first used harsh language; that when the deceased replied in kind, the appellant ran to his house and procured his gun. When he returned the deceased was milking his cow. When the appellant was a short distance from the cow-pen, he was asked by the deceased not to shoot and said that he would not shoot, but would not be hit by an iron bar. Cox then expressed a wish to talk it over, but this effort was without success. Appellant entered the pen, first setting his gun down and afterwards picking it up and going around the barn to a place, the exact locality of which I do not understand, thought it seems not to have been where the appellant milked his cow, as he did not engage in that enterprise but held his gun in his hands until his wife, observing Cox while milking leaning an iron bar on his knee, rushed to the appellant and besought him to leave and made an effort to take his gun away from him. In the course of that ef-

fort the gun was twice discharged, the bullets (at least one of them), going in the direction of the deceased. Appellant reloaded the gun after each shot. Noticing the consternation on his wife's countenance and observing Cox approaching him with the iron bar in his band, stating that the appellant did not have the nerve to shoot, he did shoot when Cox got near to him. In approaching it seems that Cox would have to cross a drain seven feet wide and travel a distance of about thirty-eight feet from the place where he was milking his cow, or at least where the body lay. From the record it seems that Cox did nothing, even after the appellant came to the pen and stood by with his gun in his hand; that the deceased continued milking and did nothing offensive except to pick up the iron bar and lay it across or on his knee. Something occurred which caused the appellant's wife to become excited and seize the gun. It fired twice. It was not until then that the deceased made any offensive movement. His offensive movement was not responsible for the shots which had been fired. Appellant knew that the firing of the shots was accidental. At least, he claims that they were so fired, but he did nothing to advise Cox of that fact, but when Cox, in response to the shots that were fired, left his cow and approached the appellant with the iron bar, the appellant shot him. It seems to me that under the circumstances, if it be granted that the shots were fired accidentally, that before shooting Cox, the appellant should have done some act to give notice that the firing of the shots was not intended to take the life of Cox. In other words, the whole picture as portrayed by the appellant and his wife, especially his failure to tell Cox that the shots were fired accidentally or to make any effort to inform him of that fact, characterizes the appellant's conduct such as did not justify him in shooting the deceased. After returning to the pen, the appellant bore a hostile appearance. This is manifest by the conduct of his wife in seeking to disarm him. That the conduct of the appellant from the time he returned until the fatal shots were fired was hostile seems apparent from the record; that after the appellant came back with his gun, the conduct of the deceased was inoffensive up to a moment before he was shot. According to the appellant and his wife, the fatal shots were preceded by two other shots. If they were accidentally fired, the appellant knew it, and the deceased did not know it. That the firing of these shots was calculated to alarm the deceased and suggest the necessity of doing something to defend his life is self-evident. If the appellant's design was inoffensive or if the shots were accidentally fired, he

should not have kept silent on the subject. The firing of the shots, together with the other conduct of the appellant described by him, was such as to cause the deceased to take some steps to save his life. If, in fact, the deceased did attack the appellant, he had no perfect right to kill the deceased. The facts apparently bring the case under the influence of a principle of law which controls the decision of many cases heretofore rendered. Among them are the following: Tate v. State, 33 S. W. Rep. 121; Bennett v. State, 95 Tex. Crim. Rep. 70; Hollman v. State, 87 Tex. Crim. Rep. 577; Winters v. State, 51 S. W. Rep. 1110; Gaines v. State, 58 Tex. Crim. Rep. 631; McGrew v. State, 49 S. W. Rep. 228; Coleman v. State, 49 Tex. Crim. Rep. 357; Smart v. State, 101 S. W. Rep. 990; Casey v. State, 50 Tex. Crim. Rep. 392; Rogers v. State, 71 Tex. Crim. Rep. 271; Taylor v. State, 47 Tex. Crim. Rep. 122; Beck v. State, 85 Tex. Crim. Rep. 578; Thumm v. State, 24 Tex. Crim. Rep. 703; Melton v. State, 24 Tex. Crim. Rep. 59.