## C. B. SPENCER v. THE STATE.

### No. 402.   Decided May 4, 1910.

**1.—Murder—Evidence—Cross-Examination—Impeachment.**

Where, upon trial for murder, a State's witness on cross-examination stated that he denied seeing anyone with a pistol when he was asked about the killing, and that he saw no part of it, and that he made this statement because he was warned by the grand jury not to tell any one of his testimony, the court properly sustained an objection to a question asked said witness that if his testimony on the trial was true, whether he did not know that what he had been telling other people was not true.

**2.—Same—Evidence—Impeachment.**

On trial of murder, where the defendant on cross-examination of the State's witness made him admit that he told the defendant and another he knew nothing of the difficulty, there was no error in the court permitting the State to show by the witness that he had been warned by the grand jury not to tell any one of his testimony.

**3.—Same—Evidence.**

Upon trial of murder, there was no error in admitting the wife of the deceased to testify that the defendant and her husband were in partnership in the truck business.

**4.—Same—Evidence—Character of Deceased.**

Where, upon trial of murder, the State objected to testimony as to the general reputation of deceased as a quarrelsome man, on the ground that no testimony had been offered that the deceased was doing anything at the time he was killed to justify the taking of his life, there was no error; besides this testimony was subsequently admitted.

**5.—Same—Difficulty with Third Parties—Evidence.**

Upon trial of murder the court erred in not admitting in evidence testimony as to a difficulty third parties had with the deceased some two hours before the killing to illustrate the character and conduct of the deceased as a dangerous and quarrelsome man, and which had been brought to the knowledge of the defendant before the homicide.

**6.—Same—Evidence—Character of Deceased.**

Where, upon trial of murder, the evidence showed that the deceased attacked defendant suddenly and without any excuse; that he threw one arm around his neck, drew him down, put his other hand in his pocket and swore that he would cut his guts out, and defendant had been told by deceased that the latter had had frequent difficulties and used his knife, it was reversible error to reject testimony that the deceased had assaulted other parties and began an attack upon them without any apparent cause or excuse, and that this occurred but a short while before the difficulty with the defendant, and of which the defendant was advised.

**7.—Same—Evidence—Threats by the Deceased.**

Where, upon trial of murder, the alleged threats by the deceased which he made in a certain conversation with the defendant's witness, were not directed against the defendant, there was no error in excluding the same.

**8.—Same—Evidence—Charge of Court—Acts of Another.**

Where, upon trial of murder, there was evidence tending to show that the defendant's brother fired the fatal shot, and the court instructed the jury that if some other person than the defendant fired the fatal shot, to acquit the defendant, there was no error in the court's failure to instruct the jury that if the brother interfered for the defendant, to acquit the defendant, as the court's charge was more favorable than the one requested.

**9.—Same—Charge of Court—Presumption—Deadly Weapon.**

Where, upon trial of murder, there was no evidence that any step had been taken by the deceased to use his knife on the defendant, there was no error in the court's failure to submit article 676, Penal Code, on the presumptions arising from the use of a deadly weapon by the deceased. Following Kendall v. State, 8 Texas Crim. App., 569, and other cases.

**10.—Same—Charge of Court—Self-Defense.**

Where, upon trial of murder, the court properly charged on actual and apparent danger in his instruction on self-defense, there was no error.

Appeal from the District Court of Falls. Tried below before the Honorable Richard I. Monroe.

Appeal from a conviction of manslaughter; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Sam R. Scott* and *Z. I. Harlan,* for appellant.—On question of impeachment on cross-examination of State's witness: Marsh v. State, 54 Texas Crim. Rep., 144; 112 S. W. Rep., 320; Holloway v. State, 54 Texas Crim. Rep., 465; 113 S. W. Rep., 928; Miller v. State, 28 Texas Crim. App., 445.

On question of the court's permitting State to prove reasons why State's witness made different statements: Sparks v. State, 51 S. W. Rep., 1120; Goodman v. State, 47 Texas Crim. Rep., 388; 83 S. W. Rep., 196; Denton v. State, 46 Texas Crim. Rep., 193; 79 S. W. Rep., 560.

On question of requiring defendant to put on further evidence of acts and threats of deceased: Horbach v. State, 43 Texas, 242; Wilson v. State, 49 Texas Crim. Rep., 50; 90 S. W. Rep., 312; Poole v. State, 45 Texas Crim. Rep., 348; 76 S. W. Rep., 565.

Upon question of refusing testimony as to former difficulties between deceased and third parties: Hampton v. State, 65 S. W. Rep., 526; Poer v. State, 67 S. W. Rep., 500; Crow v. State, 48 Texas Crim. Rep., 419; 88 S. W. Rep., 814; Childers v. State, 30 Texas Crim. App., 160; Havens v. Com. (Ky.), 82 S. W. Rep., 369; Stewart v. State, 36 Texas Crim. Rep., 130; Pate v. State, 54 Texas Crim. Rep., 462; 113 S. W. Rep., 759.

On question of court's charge on manslaughter: Benson v. State, 56 Texas Crim. Rep., 52; 118 S. W. Rep., 1049.

On question of presumption of use of deadly weapon by deceased and court's failure to give charge thereon under Penal Code, article

676: Kendall v. State, 8 Texas Crim. App., 569; Duke v. State, 56 Texas Crim. Rep., 502; 120 S. W. Rep., 894, and cases cited in opinion.

*John A. Mobley,* Assistant Attorney-General, for the State.

McCORD, JUDGE.—An indictment was returned against appellant in the District Court of Falls County charging him with the murder of one George Thomas. His trial resulted in a conviction of manslaughter with a penalty of two years confinement in the penitentiary.

1. On the trial of the case when the State's witness James McCleary was on the witness stand he was asked on cross-examination if he had not stated to Mr. Gray, the city marshal, and appellant that he saw no part of the killing, did not see any one with a pistol, and did not see appellant or any one else shoot the deceased. He admitted that he made this statement to these parties and stated that when he was brought before the grand jury that they told him not to tell any one what his testimony would be. The appellant then asked the witness the question that if his testimony on this trial was true if he did not know what he was telling appellant and Mr. Gray was a story, the appellant contending that he expected and intended that if the witness answered the question in the affirmative to press the inquiry further and make said witness admit to the jury that he did tell appellant and Gray a story and that he knew at the time he was not telling the truth; and in this way attack his credibility. The judge in his qualification to the bill says that the witness stated that the reason he had told appellant and Mr. Gray this was that the grand jury told him not to mention it and that he, the witness, testified fully as to what he told appellant and Gray. With this explanation the bill, we think, is without merit.

2. We find also a bill of exceptions in the record to a question propounded by the State to this same witness as to why he had told appellant and Gray that he did not see appellant at the difficulty. The appellant had already proved by this witness that he had told Gray and appellant he knew nothing of the difficulty and then on redirect examination the State asked him why he told this. We think this bill is without merit.

3. Bill of exceptions No. 3 is to the action of the court in permitting the State to prove by deceased's wife that she and her husband were living on the appellant's place at the time of the death of her husband, and that the appellant and her husband were in partnership in the truck business. There was no error in admitting this testimony.

4. Bill of exceptions No. 4 is to the action of the court in sustaining the State's objections to the testimony offered on the part of appellant by the witness Aiken and others to the general reputation of the deceased for being a quarrelsome, violent and turbulent man. The State

objected to this testimony when offered on the ground that there had been no testimony offered on the part of the defendant that the deceased was doing anything at the time he was killed that would justify the taking of his life, the defendant claiming that he would be able to show that the killing was in self-defense and that the court had no right to direct as to how he should proceed with this testimony. At the time this testimony was offered, the record had not disclosed that the deceased was doing anything at the time he was killed and it may be said that in the then condition of the record the testimony was inadmissible. But concede that the court was wrong in this, the court did permit him to introduce this testimony at a subsequent stage of the proceeding and, therefore, no error was committed of such a character as would authorize a reversal upon this ground.

5. Bill of exceptions No. 6 shows that the appellant offered Dewberry and Wilson as witnesses to prove that they had a difficulty with the deceased some two hours before the killing and that the deceased in that difficulty was wholly wrong. It is too well settled to cite authorities that the particulars of difficulties between the deceased and other parties can not become the subject of inquiry in the trial of a party for killing the deceased unless the proof develops and connects such difficulty with the killing. It is always permissible to prove the general character of the deceased for being a peaceable or violent man but to permit the defendant to go into an inquiry of every difficulty that the deceased may have had with different people could not possibly throw any light upon the issue being tried for if the inquiry could be extended to an investigation of particular difficulties with other parties, then the other side would have the right to show who was in the wrong in that difficulty and we would find the court trying collateral issues and other offenses rather than the offense upon trial. The court correctly refused to permit the appellant to make this proof. This is a sufficient answer to the other objection made by appellant as to a difficulty Find and Price had with the deceased.

6. Bill of exceptions No. 7 was to the action of the court in refusing to allow the appellant to prove by the witness Alexander that some thirty minutes before the difficulty in which the deceased lost his life, the deceased said to the witness that he was going up to the Spencers' store and clean out the whole damn Spencer delegation; that he liked the appellant very well, but did not like his brother John. This bill of exceptions is approved by the court with the following qualification, that the witness was asked this question by the defendant: "Was anything in that conversation said about either one or both of the Spencer boys? A. One of them. Q. Which one? A. John. Q. I will ask you now to state what Thomas said, if anything, about either of them in that conversation, and what the conversation between you and him was?" Mr. Connally for the State said: "We object, unless it is shown to be

connected with this defendant. There is no evidence showing that he and Charley ever had any altercation. All the evidence shows that all the trouble was with John." The Court: "What he said about John Spencer I do not think is relevant." Defendant: "Note our exception." With this qualification of the judge the bill is without merit.

7. There are several other bills in the record that we do not think necessary to notice. We have carefully read the same and think they are without merit.

8. On the trial of the case the appellant took the stand and testified that an altercation sprang up between him and the deceased in his, appellant's, store in regard to the difference between them in a settlement for some fees, etc. The appellant said he had collected some money for some hogs that had been put up; that the deceased wanted him to give him, deceased, the money and the appellant insisted that as the deceased owed him, that he credit it on his store account. When he made this proposition, the appellant says, the deceased flew into a rage; and continuing appellant says: "I asked him to go on home, as he was drunk. He seemed to be drinking, and I told him I did not want any trouble, and for him to go on home. He seemed to get madder and madder, and he finally cursed me, and threw his box and bell out towards the door, and grabbed me and said he was going to cut me. He caught me around the head and neck here, and where he grabbed me it was just like I was in a vice. I was trying to get away from him, for I thought he was going to cut me, and while we were in the scuffle some one shot; I do not know where it came from. I did not have any pistol up there. I did not know he was going to be shot. I did not have any understanding that John Spencer, or either of us, would shoot him on that occasion. I did not know that John was going to shoot, if he shot at that time. . . . When the shot was fired Thomas fell to the floor and pulled me down. . . . After we fell to the floor he asked me to help him up, and I could not get him up, and I called Dock to come and help me. Dock was the porter who worked for me there in the store. He was so heavy I could not get him up." The court in his general charge to the jury charged them as follows: "You are further charged that if you believe from the evidence that John Spencer, or some other one than the defendant, on an independent impulse of their own, shot and killed George Thomas, the deceased, or if you have a reasonable doubt thereof, then you will acquit the defendant." At the request of defendant the court gave the following charge: "If you find from the evidence, or have a reasonable doubt thereof, that some person other than defendant fired the pistol on the occasion in question, or if you have a reasonable doubt whether the defendant, or some other than defendant, fired the shot which killed deceased, you must acquit." The contention of appellant in this case being that the court should have charged the jury the law with reference

to the right of a third party to intervene in the protection of the life or limb of a party who is assailed, and to the rules of law that should govern his action. It strikes us that the charge given by the court as well as the one given at the instance of the appellant was much more favorable to the appellant than would have been a charge as to the right of a third party to interfere in a difficulty. Here the court, independent of whether the defendant was in the right or the wrong, and independent of whether the party who had fired the shot was acting with defendant or acted without knowledge as to who was in the wrong, or acted without knowledge as to whether the deceased was doing anything that would threaten the life of defendant, told them that if somebody other than defendant fired the fatal shot they would acquit and if they had a reasonable doubt as to whether or not the defendant fired the shot they would acquit. We, therefore, hold that the failure of the court, in view of the charges given, was not reversible error in omitting to charge on the right of a third party to interfere.

9. This brings us to the consideration of the last question presented in the motion for new trial and that is that the court erred in failing to submit article 676 of the Penal Code on the presumptions arising from the use of a deadly weapon. The contention of appellant being that if the appellant was being assaulted by the deceased, and the instrument used by the deceased was a deadly weapon, the law presumed that he intended to kill. Now the appellant, when he took the stand, testified that the deceased grabbed him around the head and neck with one arm, ran his hand in his pocket and said, "I will cut your guts out." There was no proof that a knife was ever drawn out of his pocket; the knife was afterwards found in the deceased's pocket closed and there was no proof that it was a deadly weapon. Article 676, supra, provides that when the homicide takes place to prevent murder, if the weapons or means used by the party attempting, or committing such murder are such as would have been calculated to produce that result it is to be presumed that the person so using them designed to inflict the injury. It is true that a party has a right to act upon apparent as well as real danger, but what does the use of deadly weapons within this statute mean? It means that there must be some step taken toward the use of the instrument. It will not do simply to say that this presumption arises because a man simply makes a declaration that he will cut another and has a knife in his possession. There is no proof that the deceased's hand was ever upon the knife and in all of the cases, commencing with the case of Kendall v. State, in the 8 Texas Crim. App., 569, down to and including the case of Duke v. State, 56 Texas Crim. Rep., 502; 120 S. W. Rep., 894, it will be seen that the deceased in all these cases, either had the weapon in his hand or was in the act of drawing the weapon and had it partly out and in such cases it was held that it was the duty of the court to charge on

the presumption of using a deadly weapon. In the Duke case, *supra,*
the defendant testified that the deceased was coming at him with a
gun in his hand when he, defendant, shot. This called for a charge
upon the presumption and use of a deadly weapon. It is true that
the State's witness denied that there was a gun. The McMichael case,
49 Texas Crim. Rep., 422; 93 S. W. Rep., 723, was where the defend-
ant testified that the deceased came into the room where he was and
as he passed between him and the light of the fire he discovered a pistol
in his, deceased's hand, or what he took to be a pistol. The State's
testimony showed that there was no pistol found at his body, yet this
court held he was entitled to a charge on the presumption arising from
the use of a deadly weapon because he had the same right to defend
against the appearances of danger as from actual danger and if it ap-
peared to him that it was a pistol he would have the right to this pre-
sumption. In the Ward case, 30 Texas Crim. Rep., 687, the defendant
testified that when he got up within twenty or thirty feet of deceased,
he, deceased, looked around and said: "My God, I have got you now,"
and threw his hand up to his breast and he saw him try to pull out
a pistol. The pistol seemed about half way out when appellant fired.
This court held that this was the using of the pistol within the mean-
ing of the statute and entitled the appellant to a charge on presump-
tion arising from the use of a deadly weapon. In the Clark case, 56
Texas Crim. Rep., 293; 120 S. W. Rep., 179, the proof showed not
only the drawing of the weapon but the firing of the same by the de-
ceased and this court held that the omission to give said article in
charge to the jury was cause for reversal. We have been unable to
find any case that holds that the court must charge this article simply
from the fact that the deceased has in his possession a deadly weapon
and makes declarations that he is going to use the deadly weapon.
This must go beyond the act of the declaration and he must have be-
gun to take hold of it or to make preparations. In other words, there
must be a beginning of the use of the instrument to bring it within
the meaning of this statute and he is as much entitled to a charge on
presumptions when the party begins to use the instrument as if he was
using it, but there must be a beginning. Now the only proof in this
case was that he, deceased, seized appellant around the head and neck
and said: "I will cut your guts out," and as the witness says, put his
hand in his pocket. That he ever had his hand on the knife there is
no proof. Certainly it could not be contended that if a man says, "I
am going to shoot you" and has a gun on his person but has not put
his hand on it, that a party would be entitled to this presumption.
We are inclined to hold under the facts of this case that the court
did not err in refusing to submit article 676, as the facts as developed
upon the witness stand from the appellant's testimony, did not show
that the deceased was beginning to use the knife when he was killed.

10.  Appellant complains that the court did not charge upon apparent danger and the beginning of an attack; that the appellant had a right not only to a charge upon actual danger but also upon apparent danger and upon a belief that the deceased was about to attack him. We do not think that the charge is subject to these criticisms. It is a clear presentation of the law, to our minds, and presented every issue raised by the testimony fairly, fully and favorably to the appellant.  Finding no errors in the record that would justify a reversal the judgment is in all things affirmed.

*Affirmed.*

### ON REHEARING.

### May 4, 1910.

McCORD, JUDGE.—On a former day of this court this case was affirmed.  Appellant has filed a motion for rehearing and insists that this court was in error in holding that the court below did not err in refusing to charge the jury as to the presumptions of law arising from the use of a deadly weapon, as provided in article 676 of the Penal Code.  After a careful review of this question we adhere to our former holding in this matter, and that the facts upon the trial of the case did not call for this charge by the court.

Appellant also complains that this court was in error in holding that the defendant in the trial of this case could not show or prove that the deceased had assaulted other parties and commenced an attack upon different parties without any apparent cause or excuse and that but a short while before the difficulty in which he lost his life, he had, without excuse, attacked Dewberry and Wilson and that in said attack he was wholly in the wrong and that he had drawn his knife upon them, as set forth in appellant's bill of exceptions No. 6.  After a careful review of the authorities we are of opinion that we were in error in holding that the appellant was not entitled to this testimony. According to the testimony of the defendant upon the trial of the case, the deceased attacked him without any excuse whatever; that he threw one arm around his neck, drew him down, put his other hand in his pocket and swore that he would cut his guts out.  He further testified that the deceased had told him of frequent difficulties that he had had and about how he had used his knife in the difficulties, and that the attack that was made upon Dewberry and Wilson on the morning of the difficulty and but a short time before, which was illustrative of the character of the deceased as showing that he was a man that would provoke a difficulty without any apparent excuse and that in all of his difficulties he was in the wrong.  That he would become angry, infuriated at trivial matters and would make violent assaults with his knife upon the objects of his anger.  Appellant complains that this court was in error in holding that the defendant was

not entitled to the testimony of the witnesses Nunn and Shotwell as to the circumstances or difficulties that they had had with the deceased some six months before the difficulty with appellant, and that the character of the assaults that he made upon the said Nunn and Shotwell were similar to the assaults made upon the appellant. In the case of Poer v. State, 67 S. W. Rep., 500, this court in speaking of questions similar to this, held that the appellant was entitled to this testimony, and continuing the court in that case said: "Appellant offered testimony to the effect that deceased had made attacks upon two different parties prior to the homicide, which had been brought to the attention of appellant. The circumstances under which these attacks were made show that, if true, without notice or any reasonable cause, deceased would become angry and infuriated and make violent assaults upon the object of his anger. This testimony, in our opinion, should have been admitted. Usually testimony of this character would have little bearing upon the case, and the general reputation of the party as being a violent and dangerous man would be sufficient. But, under the facts detailed in the testimony, the prior assaults, being known to defendant, would seem to have entered into and tend to solve this difficulty. So far as the evidence shows, deceased became enraged at the question of appellant as to how long before he would be again sent to the penitentiary, and immediately grabbed the mallet and made a threatening demonstration to use it. Defendant, being advised as to his conduct before in regard to the assaults made under similar circumstances, may have been induced to act more vigorously. It further tended to illustrate and explain the otherwise unexplained conduct of deceased as to whether he was a man who would probably do just what appellant testifies he did. It is true appellant testifies that he knew of the prior attacks upon the other parties, but was not permitted to show the circumtsances attending these attacks. If it was the custom of deceased, or one of his characteristics, to become suddenly enraged and make deadly attacks upon parties, without an apparent cause, or reasonable provocation, it may have entered largely into the reason for the prompt manner in which appellant shot." Also see to the same effect Crow v. State, 48 Texas Crim. Rep., 419; 88 S. W. Rep., 814; Hampton v. State, 65 S. W. Rep., 526. It may be further stated here that the proof in this case discloses that the defendant had been advised of the deceased's conduct in regard to assaults upon other parties under similar circumstances. We are of opinion that this testimony was admissible as tending to illustrate and explain the conduct of the deceased as to whether he was a man who would probably do what appellant testified he did. The above authorities were not called to our attention in the brief of counsel in the original submission of the case and this court had proceeded upon the doctrine that the general

reputation and character of the deceased could be inquired into but not particular circumstances. We are clearly of opinion, however, that where the particular transactions or difficulties have a tendency to illustrate the character and conduct of the deceased at the time of the fatal difficulty the defendant would be entitled to have such testimony to go to the jury if he had been advised of same to explain, if it will, who probably was in the wrong in the beginning of the difficulty.

On all the other questions raised in the motion for rehearing we are of opinion that our former opinion is correct.

For the error indicated the motion for rehearing is granted, the judgment of affirmance set aside and the cause reversed and remanded.

*Reversed and remanded.*