### R. L. BULLOCK v. THE STATE.

No. 2804.   Decided March 11, 1914.

Rehearing denied April 8, 1914.

**1.—Murder—Defendant's Presence—Extension of Term—Former Jeopardy.**

Under article 1726, Revised Civil Statutes, the trial judge may extend the term of the District Court until the conclusion of a pending trial, and it is not necessary that the defendant be present when the order of extension is made and entered in the minutes of the court; and where, upon trial of murder, the term of the District Court was thus extended, and, thereafter, the court granted the application of defendant's attorney to withdraw their announcement and discharged the jury, a plea of former jeopardy on the ground that defendant was not personally present when the order of extension for the term was made was correctly stricken out on demurrer of the State.

**2.—Same—Continuance.**

Where the whole record on appeal showed that the court correctly overruled defendant's third application for continuance, there was no error.

**3.—Same—Special Venire—Directory Statutes—Talesmen.**

Our statute providing for special venires and the organization of the jury is directory, and not mandatory, and where the court properly ordered a special venire out of which some of the jurors for the trial were selected and when the venire was exhausted, entered an order directing the summons of talesmen to complete the jury and defendant did not exhaust his challenges, and no objectionable juror was forced upon him, there was on error. Following Mays v. State, 50 Texas Crim. Rep., 165, and other cases.

**4.—Same—Evidence—Map—Civil Engineer.**

Where the court permitted a State's witness, who is a civil engineer, to draw a map or plat showing the various roads, the location of the various places and other data to understand the location and situation of the parties and places, upon trial of murder, which was introduced in evidence without objection, and there was no serious conflict of the testimony of various witnesses as to any point connected with said plat, and the bill of exceptions pointed out no specific error, there was no reversible error.

**5.—Same—Evidence—Circumstances.**

Upon trial of murder, where the theory of the State was that the same was committed without provocation or justification and defendant claimed self-

defense and manslaughter, there was no error in admitting testimony about the finding of a twig near where deceased was killed several days after the killing, it having been shown that deceased cut the twig off of a bush and carried it along with him in his hand and was whittling on it when defendant killed him.

### 6.—Same—Evidence—Eyewitnesses—Practice.

It is well settled. that the State is not required to introduce all of its testimony and put all the eyewitnesses to the killing upon the stand in opening its testimony, and there was no error in not compelling the children of the deceased in testifying at a certain stage of the proceedings and in not compelling them to tell the defendant and his counsel as to what they would testify to. Following Creswell v. State, 14 Texas Crim. App., 1.

### 7.—Same—Impeachment of Witness—Reputation of Deceased.

Where, upon trial of murder, the defendant claimed self-defense and he testified that the deceased had told him about different assaults he had made upon others and that, therefore, he expected an attack from the deceased at the time he shot him, etc., and otherwise attacked the character of deceased, there was no error in permitting the State, on cross-examination and by other witnesses, to show that the general reputation of deceased was that of a quiet, peaceable and law-abiding man.

### 8.—Same—Rule Stated—Specific Acts of Violence.

Whenever the circumstances are such as to authorize the accused to introduce specific acts of violence of the deceased, the State, in cross-examination, should then be permitted to go into the particulars of such specific acts, and also .to show the general reputation of the deceased to be that of a quiet, peaceable and law-abiding man. The rule is different as to deceased's conduct at the time of the killing; this can not be questioned by general reputation.

### 9.—Same—Charge of Court—Sufficiency of the Evidence.

Where, upon trial of murder, the court in a full, fair and unusually correct charge, properly submitted every issue raised by the evidence to the jury and the conviction was sustained by the evidence thereunder, there was no reversible error.

Appeal from the District Court of Maverick. Tried below before the Hon. W. C. Douglas.

Appeal from a conviction of murder in the second degree: penalty, fifteen years imprisonment in the penitentiary.

The opinion states the case.

*John R. Storms* and *John R. Sanford* and *B. Baker* and *Edwin F. Vanderbilt,* for appellant.—On question of absence of defendant at the time the court entered the order of extension of the term of court: Beaumont v. State, 1 Texas Crim. App., 533; Summers v. State, 5 id., 365; Richardson v. State, 7 id., 486; Conn v. State, 11 id., 390; Madison v. State, 17 id., 479; Rudder v. State, 29 id., 262; Hill v. State, 54 Texas Crim. Rep., 646; Derden v. State, 56 id., 396; Emery v. State, 57 id., 423.

On question of reputation of deceased: Brownlee v. State, 13 Texas Crim. App., 255; Gregory v. State, 50 Texas Crim. Rep., 73; Moore v. State, 46 id., 54; Dodson v. State, 44 id., 200; Poole v. State, 45 id.,

348; Darter v. State, 39 id., 40; Childers v. State, 30 Texas Crim. App., 160.

On question of the court's charge: Akin v. State, 56 Texas Crim. Rep., 324.

*C. E. Lane,* Assistant Attorney General, for the State.

PRENDERGAST, PRESIDING JUDGE.—Appellant was convicted of murder in the second degree and his punishment assessed at fifteen years in the penitentiary.

The record in this case is very voluminous, consisting of several hundred typewritten pages. No extended statement of the evidence is necessary. Only a brief statement of the issues need be stated.

Mr. English, with his wife and child, lived in a tent and dugout in Pecos County at the time of the killing. His nearest neighbor lived about a mile or two distant. Appellant lived some eight or ten miles from him. It was at the time a sparsely settled country. English got very sick. The deceased and other neighbors had been sitting up with him at night. Several days before the killing, appellant's sister, who lived with him, also went to the sick man's to aid him and Mrs. English. Appellant was in Coryell County when English was taken sick and knew nothing of it until he returned just a few days before the killing. The night before the killing, the deceased sat up with the sick man all night. Appellant's sister sat up part of that night also. Appellant stayed there that night but did not sit up with the sick man,—he went to bed in a tent some twenty or thirty steps away from the tent where the sick man was and those who sat up with him stayed. The theory of the appellant was that during the early part of that night after he had gone to bed the deceased insulted his sister, seeking undue familiarity with her and soliciting sexual favors which she resented. He claims that his sister told him of this early the next morning in the presence of Mr. and Mrs. English and that Mrs. English at the time then told him in the same company that the deceased, shortly prior thereto, had said to her (Mrs. English), that appellant's said sister, in effect, was a whore and permitted sexual favors to young men. The State's theory was that none of this was true and that it was all a frame-up by appellant to establish a defense in the killing. The theory of the State was that appellant was intimate with Mrs. English and that the deceased, the night before the killing, had actually caught and seen him having sexual intercourse with Mrs. English. Each side had more or less evidence tending to support their theory and deny that of the other. Deceased left the sick man's and went to his home early the next morning. Sometime during the morning, before noon, appellant got up a horse, saddled him and rode over the country interviewing several persons and riding many miles, hunting a six-shooter. To one of the parties, whom he interviewed for this purpose, upon being told that the party had no pistol, he told such party, in effect, not to tell that he had applied to him for a pistol, or to

say nothing about it to anyone. He finally succeeded in getting a pistol, then rode to the house of the deceased. The deceased had no yard fence. He lived in a house and a tent, had a wife and several children. When appellant rode up to the house he saw one of deceased's little girls and asked where her father was. The child replied he was in the back yard tanning a wolf hide. He told the child to tell her father to come there, he wanted to see him. The child delivered the message and deceased sent word back to him for him to come back where he was. Thereupon appellant rode around where he was and after the usual greetings between them and some further conversation and invitation by deceased for appellant to get down off of his horse, as testified to by the wife, who was with deceased at the time, appellant replied that he didn't have time and he wanted to see him and asked him to walk off with him. The appellant remained on his horse, the deceased followed behind some thirty steps from where he got up from tanning the wolf hide, and according to the wife and the little girl, appellant asked the deceased, in substance, "What did you see last night?" And before deceased had time to reply the appellant shot and killed him. The ball passed through the heart of the deceased and killed him instantly. Appellant then immediately ran off on his horse. Appellant disputed the testimony of the deceased's wife and daughter and, in effect, said that when the deceased had followed him off some thirty steps to have the talk with him, that he asked deceased what he had said and done to his sister the night before. Deceased replied that he didn't do anything. Appellant said, "Don't go to denying it, you did; I want you to make apologies." Deceased replied, "You damn son-of-a-bitch, hit that road, that is what you do," with a motion of his knife or hand and appellant said, "You take that back." Deceased said, "I will take your damn guts out, that is what I will do," and made a lunge at him with his knife, and he, appellant, thereupon shot and killed him.

The evidence on the one hand was amply sufficient to show a premeditated, planned, deliberate and cool murder without any provocation or justification. On the other hand that the killing was justifiable in self-defense, or if not, it was only manslaughter.

The court, in a full, fair and unusually correct charge, properly submitted every issue to the jury for a finding.

The offense is alleged to have been committed on January 24, 1912, in Pecos County, Texas. The grand jury of that county duly indicted him at the February term, 1912, and returned an indictment which was filed in said court on February 12, 1912. At the beginning of that term the court announced he would call, and it seems on the first day of the term, entered an order, duly calling a special term of said court for all purposes to be held immediately upon the adjournment of that term. The trial of the case in Pecos County was begun at said February term sometime early in March. When the case was called for a trial appellant made a motion to continue on account of the absence of one witness and the sickness of another. The court at that time overruled said motion

and proceeded with the trial. A jury was organized, the appellant plead not guilty and some of the evidence was heard, and the trial proceeded until Friday. At that time the court saw appellant's sick witness, had a doctor to examine him and then concluded that while he thought the witness was shamming to some extent in appellant's favor, it was best not to force the witness on the stand until the following Monday and adjourned the trial of the case from Saturday until the following Monday. Before the court for that term expired, on March 9, 1912, the court duly made and signed and had entered in the minutes of the court, and read and approved an order to this effect: "And the court being in the midst of the trial of the case of the State of Texas v. R. L. Bullock, No. 344, pending on the criminal docket of this court, and I, W. C. Douglas, the judge presiding, deeming it expedient, do here now order that the present term of this court do continue until the conclusion of said pending trial." The trial was resumed the following Monday morning. Appellant's sick witness was put upon the stand and testified on direct examination. Pending the cross-examination by the State, the court became satisfied that the witness was too ill to undergo a further cross-examination. The appellant's other witness had not been secured up to that time. The court thereupon announced to appellant and his attorneys in open court that if, under the circumstances, they desired to withdraw their announcement and continue the case on their application he would permit it to be done. The appellant and his attorneys both, in open court, made a motion to that effect which the court granted and, thereupon, at their instance and with their express consent, discharged the jury. At the next term of the court, the court properly, to which there is no complaint, changed the venue from Pecos to Maverick County. When the case was reached for trial in Maverick County, appellant plead former jeopardy, based on the facts above stated as to what occurred at the first attempted trial in Pecos County. As we take it, he bases his contention on the fact that the appellant was not personally present when the court called, or continued the term of court to finish the trial.

By article 1726, Revised Civil Statutes, it is provided that whenever any District Court shall be in the midst of the trial of a cause when the time for the expiration of the term as fixed by law, shall arrive, the judge presiding shall have the power and may, if he deems it expedient, extend the term of said court until the conclusion of such pending trial. In such case the extension of such term shall be shown in the minutes of the court before they are signed.

By our law, a defendant must be present when he is tried for a felony and during any and all proceedings of an actual trial. The continuing of the term of court, which is about to expire, in order to have time to finish the trial is no part of his trial and it is not necessary, although it would not be improper, for him to then be present. It would be no more necessary for him to be present when such order is made or entered in the minutes than it would be for him to be present at the expiration

of each day of the pending trial when adjournment occurs from one day to another, or for any other time pending the term when the court commences from day to day. He was not in former jeopardy by the proceedings shown above, and the court correctly sustained a demurrer to his plea.

The court did not err in overruling appellant's third application for a continuance, in view of the whole record in this case and the court's explanation of appellant's bill to the overruling of his said motion.

The court committed no reversible error in overruling appellant's motions to quash the original special venire and the second special venire, as claimed by him. It is elementary in this State that our statute, providing for special venires and the organization of a jury, is directory and not mandatory. The record in this case shows that the court properly ordered a special venire out of which some of the jurors for this trial were selected. That after this first special venire was exhausted he properly entered another order directing the summons of sufficient talesmen out of which to complete the jury and that the jury was out of these two special venires duly completed; that appellant did not exhaust his challenges and there is nothing to show, and no intimation, that any objectionable juror was forced upon him. Besides, the record shows that the court substantially, if not accurately, complied with the law as to both special venires. Williams v. State, 29 Texas Crim. App., 89; Jackson v. State, 30 Texas Crim. App., 664; Murray v. State, 21 Texas Crim. App., 466; Hudson v. State, 28 Texas Crim. App., 323; Roberts v. State, 30 Texas Crim. App., 291; Gonzales v. State, 58 Texas Crim. Rep., 257; Bizzell v. State, 72 Texas Crim. Rep., 442, 162 S. W. Rep., 861; Mays v. State, 50 Texas Crim. Rep., 165; Woodward v. State, 50 Texas Crim. Rep., 294; Blackwell v. State, 51 Texas Crim. Rep., 24. It is needless to cite other cases.

One of the State's witnesses, Mr. Purcell, who is a civil engineer and was at work building a railroad through that country at the time of the killing, drew a map or plat, not to the scale, but shown to be substantially correct, showing the various roads, the location of the various places and other data proper to understand the location and situation of the parties and places. This was introduced in evidence by the State, without objection by the appellant. All the witnesses, more or less, and some of them especially, testified about the various persons, places and things with reference to the map, pointing them out at the time to the jury. Among other witnesses who testified and used the map for the purposes stated was Carroll Fulcher, a brother of the deceased. Appellant objected to this in a general way, because the said map was not correct, misleading and calculated to lead said witness into making statements which sustained the State's theory in some particulars. The bill pointed out no specific testimony or objections to it specially. The court qualified the bill by stating that Mr. Purcell, who made the plat, was a civil engineer experienced in drawing maps and there was no serious conflict of

testimony as to any point connected with the said plat. As qualified, the bill shows no error. Branch's Crim. Law, sec. 361.

Appellant has several bills of exceptions to the testimony of various witnesses about the finding of a twig near where deceased was killed some several days after the killing. This testimony was by Mrs. Fulcher, the wife of the deceased, one of the deceased's brothers, and two of deceased's children, his little girls. The bill also embraces some objections to the order in which this testimony was introduced. The substance of the evidence is this: The little girls testified that when appellant called deceased off from where he was tanning the wolf hide, in following appellant, he cut a twig off of a mesquite bush, carried that along with him in his hand and was whittling on it when appellant killed him. Mrs. Fulcher and deceased's brother did not know of this until several days after deceased was killed, when the little girls told them of it. As soon as they were told they thereupon went to the scene of the killing, hunted for such a twig near where deceased fell when shot and found it; they thereupon hunted for and found the mesquite bush from which the twig was cut and fitted it to, and testified that it fit exactly, and both showed it had been recently cut. The little girls swore positively that their father did cut this twig off of the mesquite bush when he walked off with appellant and was whittling on it at the time he was killed. The fact that Mrs. Fulcher and deceased's brother did not know of this and did not hunt for and find said twig until several days after the killing, would go to the weight and not to the admissibility of the evidence. No error is shown in the order in which the evidence was introduced and none of appellant's bills on this subject show any error.

The State first introduced on the subject of this twig, and the finding of it, etc., Mrs. Fulcher, deceased's wife, and the said brother of deceased. After introducing much other evidence, the State rested without introducing the two little girls. Thereupon and before proceeding with the trial appellant sought to have the little girls first placed on the stand as they were eyewitnesses also to the killing and have them to testify. The court denied this; they thereupon, sought permission of the court to consult said witnesses in company with their mother and wanted the court to instruct them, and require them to tell appellant and his counsel what their testimony was going to be. The court permitted them to seek and attempt to have the interview, but the witnesses would not tell appellant and his counsel what their testimony would be, and the court informed the appellant's attorneys that he had no power to require them to do so. The appellant complains of the action of the court in this matter. It has been too often decided and too well established to need citation to the authorities that the State was not compelled to introduce all of its testimony and put all the eyewitnesses to the killing upon the stand in opening its testimony. It is also well established and has been clearly held by this court that the court's action in not compelling the little girls to tell the appellant and his counsel what they would testify

to and that the court's action in no way showed any error. Creswell v. State, 14 Texas Crim. App., 1.

As stated above, self-defense was very pertinently and clearly raised by appellant's testimony alone. He attacked the character of deceased and testified that the deceased had told him about whipping a Mexican in Crane County, where he then lived, and running another man by the name of Bosworth in his house with his knife, and told what the trouble was about. And that the deceased told him that he hit the Mexican with a bucket and a rock, and when Bosworth took it up, or interfered, that he threatened to "take Bosworth's guts out," and that he would have cut Bosworth if he could have gotten to him, and that the reason he couldn't get to him was that Bosworth ran into his house. In addition to testifying that deceased told him this, he said Mert Nevill, a relative of appellant, and a Mr. Miller, also told him about it all before he killed deceased. He then further attacked the character of deceased and introduced Bosworth and Nevill who also testified to substantially the same thing about the deceased having a fight with a Mexican and his threat to cut and "take out Bosworth's guts" with his knife and that they told appellant of this before this killing. This evidence clearly attacked the deceased as a violent and dangerous man and especially in the particular of cutting, etc., with a knife, and appellant, in his testimony, fitted this in with his own as to what occurred and was said between him and deceased at the time he killed him, and said that the deceased attempted and threatened to do to him just exactly what he claims the deceased had attempted on said Boswell. Thereupon, the State was permitted, over appellant's objection, to prove by Boswell on cross-examination and by some other witnesses that the general reputation of deceased was that of a quiet, peaceable and law-abiding man.

It is well settled that when pertinent, as in this case, an appellant can attack the deceased by showing that he was a violent and dangerous man. Ordinarily such proof must be made by showing that such was his general reputation. (Heffington v. State, 41 Texas Crim. Rep., 315; Connell v. State, 45 Texas Crim. Rep., 142; Poole v. State, 45 Texas Crim. Rep., 348; Darter v. State, 39 Texas Crim. Rep., 40, and other cases.) It is equally well settled that when self-defense is an issue and it is proper or necessary to show the state of mind of the appellant at the time of the commission of an offense, that he can then so attack the deceased by showing specific acts of violence which were then known to him, or had been communicated to him, which acts of violence show or tend to show that the deceased was a violent and dangerous man. (Crow v. State, 48 Texas Crim. Rep., 419; Childers v. State, 30 Texas Crim. App., 160; Spencer v. State, 59 Texas Crim. Rep., 217, 128 S. W. Rep., 118; Poer v. State, 67 S. W. Rep., 500, and other cases.) Whenever the circumstances are such as to authorize an appellant to introduce such specific acts, the State, in cross-examination, should then be permitted to go into the particulars of such specific acts for the purpose of showing

that the deceased was justifiable, or rebut defendant's theory that such acts show him to have been a violent and dangerous person. Such specific acts would tend to show, and in some instances might show, the deceased to be a violent and dangerous man, equally or more than his mere general character or reputation on the point. Certainly when an appellant is permitted to so attack a deceased, the State should then be permitted, if it could, to introduce proof to rebut such evidence. The lips of the murdered man are, of course, closed. He can not testify to dispute or refute such evidence by an accused. The State, therefore, unquestionably has the right to meet this proof by showing that the general reputation or character of a deceased was that a quiet, peaceable and law-abiding man and not the reverse, as attempted to be shown by an appellant. Among other objects of our Code, as expressly enacted therein, it is said, its object is "to bring to the investigation of each offense on the trial all the evidence tending to produce conviction or acquittal." (C. C. P., art. 1.) In the recent case of Hysaw v. State, 69 Texas Crim. Rep., 562, 155 S. W. Rep., 941, on this question, we said: "We think that where the appellant puts the reputation of the deceased in issue on this subject by evidence either of his general reputation to that effect, or by specific acts showing it, then it would be proper for the State to rebut this by showing that his reputation in this respect was not as attempted to be shown by such evidence, but his character was that of a peaceable, quiet, and law-abiding man." (The Texas & Pacific R. R. v. Raney, 86 Texas, 363; R. R. v. Weideman, 62 S. W. Rep., 810; 7 Ency. of Ev., 240.) It is also well established that when the evidence is confined to the acts of the deceased at the very time of the killing and are the res gestae thereof, and such acts show him to be a violent and dangerous man, then the State can not rebut by proof of his good reputation in those respects. This is well established by the cases of Gregory v. State, 50 Texas Crim. Rep., 73; Keith v. State, 50 Texas Crim. Rep., 63; Wakefield v. State, 50 Texas Crim. Rep., 124; Moore v. State, 46 Texas Crim. Rep., 54, and other cases cited by appellant. The court, therefore, under the circumstances and facts of this case, committed no error in permitting the State to introduce the said evidence complained of by appellant.

Appellant, in his motion for new trial has attacked various words, phrases and paragraphs of the court's charge. His motion on the subject embraces a considerable. number of typewritten pages. The court's charge is lengthy, but, as we have said above, it is a most admirable charge, properly presenting every issue and correctly enunciating the law applicable thereto that was raised by the evidence in this case. It is unnecessary to discuss either or all of appellant's objections. After a careful consideration of them, it is our opinion that they point out no error.

The judgment will be affirmed.

*Affirmed.*

[Rehearing denied April 8, 1914.—Reporter.]